## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**CHRISTOPHER W. ODEN,**

     Plaintiff,

v.                                     Civil Action No. **3:17CV489**

**ERIC WILSON, *et al.*,**

     Defendants.

### MEMORANDUM OPINION

Christopher W. Oden, a federal inmate proceeding *pro se* and *in forma pauperis*, filed this *Bivens*[1]/Federal Tort Claims Action. By Memorandum Order entered on February 26, 2018, the Court directed Oden to file a Particularized Complaint. (ECF No. 27.) On July 2, 2018, Oden filed his Particularized Complaint. (ECF No. 42.)

Thereafter, the Court attempted to serve the defendants named in the Particularized Complaint. On May 24, 2019, Defendants Wilson, Laybourn, Caraway, and Connors (collectively, "Defendants") filed their Motion to Dismiss.[2] (ECF No. 61.)[3] Oden opposed the Motion to

---

[1] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] Defendant Wilson was the Warden at Federal Correctional Complex in Petersburg ("FCC Petersburg"), referred to as Defendant 1 in the Second Amended Complaint. (Second Am. Compl. ¶ 2.) Defendant Laybourn was the Clinical Director at the FCC Petersburg, referred to as Defendant 2 in the Second Amended Complaint. (*Id.* ¶ 3.) Defendant Caraway was the Administrative Remedy Regional Director for the Bureau of Prisons ("BOP"), referred to as Defendant 4 in the Second Amended Complaint. (*Id.* ¶ 5.) Defendant Connors was the Administrative Remedy Central Director for the BOP, referred to as Defendant 5 in the Second Amended Complaint. (*Id.* ¶ 6.)

[3] By Memorandum Opinion and Order entered on November 25, 2019, the Court dismissed the other two defendants listed in the Particularized Complaint, Defendants Hadded and Pharmacy Personnel, because Oden failed to serve them within the time required by Federal Rule of Civil Procedure 4(m).

Dismiss (ECF No. 68), and on June 10, 2019, moved to amend his complaint. (ECF No. 67.) Subsequently, on June 28, 2019, Oden filed his Second Amended Complaint. (ECF No. 74.) Given the lenient standard for amending a complaint, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), Oden's Motion to Amend (ECF No. 67) will be GRANTED. The Second Amended Complaint (ECF No. 74) will be FILED and will SUPPLANT the prior complaints. Nevertheless, the Court will apply the analysis set forth in Defendants' Memorandum in Support of the Motion to Dismiss (ECF No. 62) and the Court's obligation under 28 U.S.C. § 1915(e)(2) to review the adequacy of the Second Amended Complaint.

## I. STANDARD FOR MOTION TO DISMISS

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)), *aff'd*, 36 F.3d 1091 (4th Cir. 1994). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This

principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

3

## II. ODEN'S ALLEGATIONS

Oden complains about the quality and lack of medical care he received while incarcerated at FCC Petersburg based on nine separate fact patterns. Specifically, these claims are as follows: Claim 1, failure to provide Oden with a single cell as required by Oden's Post Traumatic Stress Disorder ("PTSD"); Claim 2, injuries sustained when Oden was provided with a defective walker; Claim 3, failure to promptly provide spinal injections and egg-crate bedding required for Oden's back injuries; Claim 4, eye damages sustained by failure to provide proper medication; Claim 5, failure to provide a traumatic brain injury evaluation ("TBI evaluation"); Claim 6, failure to provide medication to treat a staph infection; Claim 7, failure to transfer Oden to a suitable medical care facility; Claim 8, failure to provide an eye injection; and, Claim 9, inappropriately transferring Oden when he had pending medical appointments. For each of these claims, Oden raises an Eighth Amendment violation and Federal Tort Claim Act ("FTCA") violation based on Virginia medical malpractice law. The pertinent allegations in support of these Counts are set forth below. Oden's Second Amended Complaint is disjointed, light of specific facts, and heavy on conclusory allegations.[4]

### A.     Claim 1—Failure to provide single cell

Oden contends that he has psychiatric documents which show that "[he] has negative effects in the cell with others, depression, anxiety." (Second Am Compl. ¶ 43.) Oden contends that, while he was in BOP custody, he was diagnosed with PTSD and it was recommended that Oden be placed in a single occupancy cell to ameliorate that condition. (*Id.* ¶ 46.) Oden alleges that Dr. Laybourn ignored Oden's requests "to be seen by a qualified PTSD doctor," (*id.* ¶ 47),

---

[4] The Court omits from the following allegations any citations to Oden's supporting documents. The Court corrects the capitalization, punctuation, and spelling in the quotations from Oden's submissions.

4

and removed Oden's single cell status, (*id.* ¶ 49). The removal of Oden's single cell status caused Oden "mental anguish and unreported assaults." (*Id.*) Dr. Laybourn "failed to work with psychology to combat this issue." (*Id.* ¶ 51.) Oden contends he is obviously dangerous and unbalanced as "he has stabbed another person for just trying to wake him up" and recently caused another inmate to fall from a ladder. (*Id.* ¶ 54.) Additionally, "Oden assaulted another inmate/friend with no ill intentions." (*Id.*) Lastly, Oden was "placed in a cell with a non-compatible cellmate who was Muslim . . . . This caused Oden's transfer to a higher security level U.S.P. for negative interactions with staff and others." (*Id.* ¶ 55.)

After his transfer, Oden is incarcerated far from home and has not seen his son for 2 years. (*Id.* ¶ 56.) "Oden now is at his new prison with no single cell status and put into a small confined cell with two other inmates causing continuing episodes and a now permanent 3 [inch] scar to forehead." (*Id.* ¶ 58.) In April of 2016, Oden was examined by Dr. Aponte and "he reapplied Oden's single cell status, thus proving the neglected medical care [of Defendants Wilson and Laybourn]." (*Id.* ¶ 64.)

## B. Claim 2—Inappropriate Housing Assignment and Defective Walker

"Oden was issued a defective walker causing injury to his [left] knee, back, and shoulder in Jan. of 2015." (*Id.* ¶ 66.) The defective walker "had no brakes and the wheel bearings were out in right front wheel causing it to lock up at times." (*Id.* ¶ 68.) Dr. Laybourn inappropriately put Oden in a top tier housing unit with no handicap access. (*Id.* ¶ 67.) In January of 2015, because of snow, Oden was forced to exit his housing unit via the rear exit that has a slope that does not accommodate walkers. (*Id.* ¶¶ 69–70.) While going down the slope, Oden attempted to slow down, but the defective walker had no brakes. (*Id.* ¶ 70.) The front wheels locked up, causing Oden to fall, tear his ACL, meniscus, and rotary cuff, and injure his back. (*Id.*)

Dr. Laybourn signed off on providing Oden with an MRI. (*Id.* ¶ 71.) However, it took over a year to actually schedule the MRI, and only after Oden filed for administrative remedies. (*Id.*) Oden suffered for two years after his fall before he finally received surgery for his shoulder. (*Id.* ¶ 72.) Oden has yet to receive surgery for his back. (*Id.*) Oden filed numerous complaints with Dr. Laybourn about the inadequacy of his care. (*Id.* ¶ 73.) Warden Wilson "in his neglected attention . . . is also directly responsible for undue pain and suffering by failing to correct in Oden's Admin Remedy filings. This would force medical to correct in a timely manner and or issue adequate treatment with numerous refill delays." (*Id.* ¶ 74.)

### C.     Claim 3—Special Bedding

"Oden was diagnosed with 2 pinched nerves [and] four bulging discs . . . ." (*Id.* ¶ 76.) Prior to his incarceration, Oden received injections in his spine every 4 to 5 weeks to relieve the pain. (*Id.* ¶ 77.) Oden only has had 2 spinal injections since he has been incarcerated in the BOP. (*Id.* ¶ 79.) Oden's medical records at the BOP noted that Oden's spinal condition has gotten worse and that Oden requires special bedding to reduce his pain and allow him to sleep. (*Id.* ¶ 78.) Dr. Laybourn is aware that Oden needs special bedding and spinal injections to reduce his pain. (*Id.* ¶ 79.)

Oden made Warden Wilson aware of his need for special bedding, but Wilson failed to provide the same. (*Id.* ¶¶ 80–87.) In fact, Warden Wilson and Dr. Laybourn overruled other physicians who had approved Oden for special bedding. (*Id.* ¶ 88.)

### D.     Claim 4—Eye Damage

In 2012, Oden had some sort of undefined "eye condition." (*Id.* ¶ 94.) Oden's eye condition previously had been successfully treated with "Pred Forte" eye drops. (*Id.*) In March of 2013, Oden's eye condition "had a flair up." (*Id.*) On March 14, 2013, the opthamologist saw

Oden and issued a prescription for "Pred Forte" for 7 days. (*Id.* ¶¶ 95–96.) Per the ophthalmologist's instruction, Oden went to the medical department for a refill of the prescription on March 20, 2013. (*Id.*) Dr. Laybourn did not fill the prescription for 5 days, causing swelling, pain, and permanent injury to Oden's eye. (*Id.* ¶¶ 96–97, 101.)

### E.  Count 5—Traumatic Brain Injury ("TBI") Evaluation

When Oden entered the BOP in 2012, he had been scheduled for a TBI evaluation. (*Id.* ¶ 116.) Oden informed Dr. Laybourn of his need for a TBI evaluation. (*Id.* ¶ 117.) Dr. Laybourn signed off on the decision of a subordinate who told Oden to "wait until [he] gets out [of the BOP]." (*Id.*) In the years that followed, Oden has experienced severe migraines. (*Id.* ¶ 119.) In March of 2017, Dr. Laybourn moved to a different part of FCC Petersburg. (*Id.* ¶ 123.) Dr. Aponte took over Dr. Laybourn's position. (*Id.*) Dr. Aponte scheduled Oden for a TBI evaluation. (*Id.*) Defendants were aware of Oden's need for a TBI evaluation and their failure to schedule one subjected Oden to "continuous suffering." (*Id.* ¶¶ 126, 127.)

### F.  Count Six—Staph Infection

On or about July 15, 2014, Oden was notified that he had a staph infection. (*Id.* ¶ 129.) When notified of the problem, "Medical Licensed Practitioner, (MLP)" Hadded (*id.* ¶ 4), told Oden to fill out a triage form, (*id.* ¶ 130). Oden filled out the form, but still was not seen until July 19, 2014. (*Id.*) "This delay caused a hole the size of a pimple to grow to the size of a half dollar and bigger on [Oden's] stomach area, causing pain, [and] stinking, rotting flesh." (*Id.* ¶ 131.) The delay also caused the development of a staph infection on Oden's face. (*Id.* ¶ 132.) Even after Oden was seen, MLP Hadded and Defendant Laybourn failed to follow up with needed medication until July 22, 2014. (*Id.* ¶¶ 133, 134.) This delay allowed the staph infection to grow, such that the normal dosage of medication was not effective. (*Id.* ¶¶ 134, 135.) As a result, MLP Hadded

had to remove the rotting flesh from Oden's stomach with tweezers, without the use of pain medication. (*Id.* ¶ 135.) The staph infections and related procedures left Oden with permanent scars. (*Id.* ¶ 136.)

### G. Claim Seven—Medical Transfer

In 2012, because of his various ailments, Oden requested a transfer to an appropriate "medical BOP" that could accommodate all of his medical needs. (*Id.* ¶¶ 139, 140.) MLP Hadded and Dr. Laybourn ignored Oden's "deteriorating bone disease" and did not transfer Oden until April 17, 2017. (*Id.* ¶¶ 140, 143.) At that time, Oden was transferred to Springfield, Missouri. (*Id.* ¶ 143.) This facility is too far from Oden's home and thus he is unable to see his family. (*Id.* ¶ 144.)

### H. Claim Eight—Eye Injection

MLP Hadded and Dr. Laybourn are "responsible for not following up" on Oden's need for an eye injection. (*Id.* ¶ 146.) After years, Oden has yet to receive the appropriate eye injection. (*Id.* ¶ 147.) It "is now too late because the . . . tear that . . . might have [been] fixed . . . now [is] torn and floats in [his] eye." (*Id.*)

### J. Claim Nine—Transfer Despite Pending Medical Appointments

On December 19, 2016, Oden had rotator cuff surgery. (*Id.* ¶ 152.) On December 25, 2016, Oden reinjured his shoulder. (*Id.*) Despite the fact that Oden had a follow-up appointment with the surgeon scheduled for that week, Warden Wilson and Dr. Laybourn signed off on transferring Oden to another institution. (*Id.* ¶ 153.) Oden also had pending appointments with orthopedics for his knee and spine condition, along with a TBI evaluation. (*Id.* ¶ 154.)

## III. ANALYSIS

### A. FTCA Claims

The FTCA creates a limited waiver of the sovereign immunity of the United States "by authorizing damages actions for injuries caused by the tortious conduct of federal employees acting within the scope of their employment, when a private person would be liable for such conduct under state law." *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006) (citing 28 U.S.C. § 1346(b)(1)). In actions brought pursuant to the FTCA, courts apply the substantive law of the state in which the act or omission occurred. 28 U.S.C. § 1346(b)(1). Thus, Virginia law governs in this instance.

The Virginia Medical Malpractice Act ("VMMA") requires that, prior to serving the defendant, a party alleging medical malpractice must obtain an expert certification of merit indicating that the defendant "deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed." Va. Code Ann. § 8.01–20.1.[5] If a plaintiff fails to

---

[5] Specifically, Va. Code Ann. § 8.01–20.1 states as follows:

> Every motion for judgment, counter claim, or third party claim in a medical malpractice action, at the time the plaintiff requests service of process upon a defendant . . . shall be deemed a certification that the plaintiff has obtained from an expert witness . . . a written opinion signed by the expert witness that, based upon a reasonable understanding of the facts, the defendant . . . deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed. . . .
> . . . .
> Upon written request of any defendant, the plaintiff shall, within 10 business days after receipt of such request, provide the defendant with a certification form that affirms that the plaintiff had obtained the necessary certifying expert opinion at the time service was requested or affirms that the plaintiff did not need to obtain a certifying expert witness opinion. If the plaintiff did not obtain a necessary certifying expert opinion at the time the plaintiff requested service of process on a defendant as required under this section, the court shall impose sanctions . . . and may dismiss the case with prejudice.

*Id.*

obtain a necessary certifying expert opinion at the time the plaintiff requested service, "the court shall impose sanctions . . . and may dismiss the case with prejudice." *Id.*; *see Parker v. United States*, 475 F. Supp. 2d 594, 596–97 (E.D. Va. 2007) (citations omitted). The VMMA provides a limited exception to the certification requirement where expert certification is excused "if the plaintiff, in good faith, alleges a medical malpractice action that asserts a theory of liability where expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." Va. Code Ann. § 8.01–20.1. This exception "applies only in 'rare instances' because only rarely do the alleged acts of medical negligence fall within the range of a jury's or factfinder's common knowledge and experience." *Parker*, 475 F. Supp. 2d at 597 (footnotes omitted) (quoting *Beverly Enter.-Va., Inc. v. Nichols*, 441 S.E.2d 1, 3 (Va. 1994)); *see Keitz v. Unnamed Sponsors of Cocaine Research Study*, 510 F. App'x 254, 255–56 (4th Cir. 2013); *James v. United States*, 143 F. Supp. 3d 392, 396 (E.D. Va. 2015) ("The exception to the certificate of merit requirement applies only in rare circumstances, such as when a foreign object is left in a patient's body." (citing *Easterling v. Walton*, 156 S.E.2d 787, 790–91 (Va. 1967))).

Here, in response to the request of the United States for an expert certification, Oden acknowledged that he had not obtained an expert certification. (ECF No. 59, at 1.) Oden suggested that an expert certification is not required because: (1) he is an indigent inmate and (2) the acts of negligence alleged fall within a juror's common knowledge. (*Id.* at 1–2.) Oden is wrong. The VMMA does not carve out an exception for the expert certification requirement for indigent inmates. *Kerr v. U.S. Dep't of Justice*, No. 3:07CV422, 2008 WL 3928701, at *4 (E.D. Va. Aug. 21, 2008). Moreover, Oden's claims about the appropriate care for his PTSD, staph infection, TBI, and eye, back, and rotator cuff injuries do not fall "within the range of the jury's common

knowledge and experience." Va. Code Ann. § 8.01–20.1. Similarly, Oden's complaints that Defendants acted negligently by failing to provide a medically appropriate housing assignment, by failing to transfer him to an appropriate medical facility sooner, and by transferring him to a different facility when he had medical appointment pending, are not "within the range of the jury's common knowledge and experience." *Id.* Laymen do not know the correct procedures and standard of care for treatment of Oden's host of ailments, and professional medical judgment would be required to decide whether Defendants acted negligently with respect to these claims and whether negligence was the cause of an injury to Oden.[6] *See Bond v. United States*, No. 1:08CV324 (JCC/TRJ), 2008 WL 4774004, at *3 (E.D. Va. Oct. 27, 2008) (concluding expert certification was required because to prevail the inmate "would have to show that the failure to provide him with an orthopedic examination for his finger injury within two months deviated from the applicable standard of care, and that the delay was the proximate cause of his allegedly permanent damage"). Accordingly, Oden's FTCA claims in Claims 1 through 9 will be DISMISSED.

**B.    Constitutional Claims**

With respect to Oden's Eighth Amendment claims, Defendants argue these claims should be dismissed because: (1) Counts 1 through 8 are barred by the relevant statute of limitations; (2) in Counts 1 through 8, Oden fails to allege that Defendants Wilson, Caraway, and Connors were personally involved in the deprivation of Oden's rights; and (3) Oden fails to allege Defendants acted with deliberate indifference. As these defenses somewhat overlap, the Court provides a general overview of the relevant legal principles prior to addressing Oden's claims

---

[6] The Court notes that in Claim 2, Oden also complains that the walker he was issued was defective. Oden, however, fails to allege facts that plausibly suggest that Defendants knew the walker that he was using when he fell was defective. The Court's dismissal of Oden's FTCA in Claim 2 does not apply to a claim that a defendant negligently provided a defective walker.

against each defendant. The Court deems Oden to raise the following claims for relief against the following individuals:

Claim 1     Oden required a single cell because he suffers from PTSD.
      (a)    Defendant Laybourn acted with deliberate indifference to this need;
      (b)    Defendant Wilson acted with deliberate indifference to this need;
      (c)    Defendant Caraway acted with deliberate indifference to this need; and,
      (d)    Defendant Connors acted with deliberate indifference to this need.

Claim 2     Oden's medical condition necessitated that he be assigned to a lower tier. Oden, however, was assigned to a higher tier with a defective walker. This caused a fall which resulted in a torn rotator cuff and back injury.
      (a)    Defendant Laybourn acted with deliberate indifference to Oden's need for a medically appropriate housing unit and to prompt surgical care following his fall; and,
      (b)    Defendant Wilson also is "responsible for undue pain and suffering" because he failed to respond appropriately to Oden's administrative remedies. (Second Am. Compl. ¶ 74.)

Claim 3     Oden's spinal problems require special bedding and spinal injections.
      (a)    Defendant Laybourn acted with deliberate indifference to these needs;
      (b)    Defendant Wilson acted with deliberate indifference to these needs;
      (c)    Defendant Caraway acted with deliberate indifference to these needs; and,
      (d)    Defendant Connors acted with deliberate indifference to these needs.

Claim 4     Defendant Laybourn acted with deliberate indifference to Oden's eye condition: (a) by failing to ensure that Oden promptly received medication when the condition flared up, and (b) by failing to ensure that Oden received appropriate medical care for the resulting tear in his eye.

Claim 5     Oden required a TBI evaluation.
      (a)    Defendant Laybourn acted with deliberate indifference to this need;
      (b)    Defendant Wilson acted with deliberate indifference to this need;
      (c)    Defendant Caraway acted with deliberate indifference to this need; and,
      (d)    Defendant Connors acted with deliberate indifference to this need.

Claim 6     Oden contracted a staph infection which required prompt and adequate medical attention. Defendant Laybourn acted with deliberate indifference to this need.

| Claim 7 | Oden's medical condition required Oden's prompt transfer to an appropriate BOP medical facility. Defendant Laybourn acted with deliberate indifference to this need. |
|---|---|
| Claim 8 | Oden required an eye injection for a tear in his eye. Defendant Laybourn acted with deliberate indifference to this need and now it is too late to repair the damage. |
| Claim 9 | In December of 2016, Oden had numerous pending medical appointments. |

      (a)    Defendant Wilson acted with deliberate indifference to Oden's serious medical needs by signing off on his transfer to another institution; and,

      (b)    Defendant Laybourn acted with deliberate indifference to Oden's serious medical needs by signing off on his transfer to another institution.

### 1.    Statute of Limitations

Oden signed his original complaint on June 6, 2017. (ECF No. 1, at 6.) The Court assumes that this is the date Oden handed his complaint to prison officials for mailing to the Court and that is the date the Court deems the action filed. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

Because there is no explicit statute of limitations for *Bivens* actions, courts borrow the personal injury statute of limitations from the relevant state. *See Reinbold v. Evers*, 187 F.3d 348, 359 n.10 (4th Cir. 1999) (citing *Wilson v. Garcia*, 471 U.S. 261, 266–70 (1985)). Virginia applies a two-year statute of limitations to personal injury claims. *See* Va. Code Ann. § 8.01–243(A) (West 2019). Hence, Oden was required to have filed this action within two years from when the underlying claim accrued. "A claim accrues when the plaintiff becomes aware of his or her injury, *United States v. Kubrick*, 444 U.S. 111, 123 (1979), or when he or she 'is put on notice . . . to make reasonable inquiry' as to whether a claim exists." *Almond v. Sisk*, No. 3:08CV138, 2009 WL 2424084, at *4 (E.D. Va. Aug. 6, 2009) (omission in original) (quoting *Nasim*, 64 F.3d at 955).

"However, when a harm has occurred more than once in a continuing series of acts or omissions, a plaintiff under certain circumstances may allege a 'continuing violation' for which

the statute of limitations runs anew with each violation." *DePaola v. Clarke*, 884 F.3d 481, 486

(4th Cir. 2018) (citing *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1166–67 (4th Cir.

1991)). In *DePaola*, the Fourth Circuit stated that,

> a prisoner may allege a continuing violation under Section 1983 by identifying a
> series of acts or omissions that demonstrate deliberate indifference to a serious,
> ongoing medical need. The statute of limitations does not begin to run on such a
> claim for a continuing violation of a prisoner's Eighth Amendment rights until the
> date, if any, on which adequate treatment was provided.

*Id.* at 487 (citation omitted). The Fourth Circuit then explained that,

> to assert a Section 1983 claim for deliberate indifference under the "continuing
> violation" doctrine, a plaintiff must (1) identify a series of acts or omissions that
> demonstrate deliberate indifference to his serious medical need(s); and (2) place
> one or more of these acts or omissions within the applicable statute of limitations
> for personal injury.

*Id.* (citation omitted). "A plaintiff's claim of a continuing violation may extend back to the time

at which the prison officials first learned of the serious medical need and unreasonably failed to

act." *Id.* (citing *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001)).

### 2. Eighth Amendment Liability

"Because vicarious liability is inapplicable to [*Bivens* actions], a plaintiff must plead that

each Government-official defendant, through the official's own individual actions, has violated

the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Furthermore, to state an Eighth

Amendment claim, an inmate must allege facts showing "(1) that objectively the deprivation of a

basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted

with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir.

1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate

must allege facts to suggest that the deprivation complained of was extreme and amounted to more

than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their

offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381). With respect to claims of inadequate medical treatment under the Eighth Amendment, "the objective component is satisfied by a serious medical condition." *Quinones*, 145 F.3d at 167.

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were

'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

In order to state an Eighth Amendment claim for denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson*, 503 U.S. at 9 (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

### 1. Claim 1

In Claim 1, Oden contends that Defendants were deliberately indifferent to his need for proper psychiatric care for his PTSD and the need for single cell because of his PTSD. Oden, however, fails to alleges facts that suggest that Defendants Wilson, Caraway, or Connors personally participated in the denial of Oden's psychiatric care or need for a single cell or otherwise

acted with deliberate indifference. Accordingly, Claims 1(b), 1(c) and (d) will be DISMISSED WITHOUT PREJUDICE.

Although Dr. Laybourn cancelled Oden's single cell status, as explained below, Oden fails to allege facts that plausibly suggest that such action constituted deliberate indifference. While hardly a model of clarity, Oden's allegations and his submissions indicate that he was diagnosed with, and was being treated for, PTSD, in January of 2015 (ECF No. 42–4, at 1–2). At some point, a physician recommended a single cell for Oden. (ECF No. 42–5, at 1.) On February 29, 2016, Dr. Laybourn reviewed Oden's chart and noted that Oden's PTSD diagnosis was "not supported by psychology" and further concluded that, "[t]his diagnosis is not considered criteria for a single cell. Single cell occupation is reserved for those inmates with infectious disease issues that require containment. There is no reason why he cannot be housed with a roommate." (ECF No. 42–6, at 1.) Dr. Laybourn then apparently cancelled the order that provided Oden with a single cell. Later, a different doctor reinstated Oden's single cell status. (Second Am. Compl. ¶ 64.) However, it is far from clear whether the reinstatement of single cell status was attributable to Oden's PTSD or his deteriorating physical condition. Without more, this sort of disagreement between doctors as to the proper course of treatment for an ailment cannot support of claim of deliberate indifference. *Jackson v. Lightsey*, 775 F.3d 170, 178–79 (4th Cir. 2014); *Gelardos v.  Conmed Healthcare Mngt., Inc.*, No. 3:10CV259–HEH, 2012 WL 2567155, at *3 (E.D. Va. July 2, 2012) ("If an inmate's 'disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a *doctor* disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness.'" (quoting *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990))). Accordingly, Claim 1(a) will be DISMISSED WITHOUT PREJUDICE.

### 2. Claim 2

In Claim 2, Oden contends that his medical condition necessitated that he be assigned to a lower tier. Oden, however, was assigned to a higher tier with a defective walker. This caused a fall which resulted in a torn rotator cuff and a back injury. Although Oden complains that Defendants Laybourn and Wilson acted with deliberate indifference, Oden fails to identify any act of deliberate indifference by Defendants Laybourn or Wilson that occurred within two years of June 6, 2017, that resulted in an injury to Oden's person. *See DePaola*, 884 F.3d at 487 (citation omitted). Accordingly, Claims 2(a) and 2(b) will be DISMISSED WITHOUT PREJUDICE as barred by the statute of limitations.

### 3. Claim 3

In Claim 3, Oden asserts that Defendants acted with deliberate indifference to his need for special bedding and spinal injections. Oden, however, fails to allege any facts that suggest that Defendants Caraway or Connors were aware that Oden required special bedding or spinal injections, much less acted with deliberate indifference to those needs. Accordingly, Claims 3(c) and 3(d) will be DISMISSED WITHOUT PREJUDICE.

With regard to his need for spinal injections, Oden fails to identify any act of deliberate indifference by Defendants Laybourn or Wilson that occurred within two years of June 6, 2017. Accordingly, that aspect of Claims 3(a) and 3(b) will be DISMISSED WITH PREJUDICE. Although Oden vaguely alleges that, subsequent to June 6, 2017, Defendants Laybourn and Wilson denied him an egg-crate mattress, he fails to allege facts that suggest such actions amounted to deliberate indifference. Specifically, on July 6, 2015, Oden was examined by Dr. Prakasam Kalluri at Colonial Orthopedics for his lower back pain. (ECF No. 74–1, at 43.) Dr. Kalluri recommended that Oden be provided with an egg-crate foam mattress. (*Id.*) Dr. Laybourn was made aware of

this recommendation. (Second Am. Compl. ¶ 80.) Nevertheless, Dr. Laybourn and Warden Wilson denied Oden an egg-crate mattress. (*Id.* ¶ 88.) Without more, Dr. Laybourn's decision not to follow the outside doctor's recommendation is insufficient to support a claim of deliberate indifference. *See Koos v. Corr. Corp. of Am.*, 63 F. App'x 796, 797 (6th Cir. 2003) (concluding that inmate's "factual allegations fail[ed] to state a claim upon which relief can be granted" where inmate alleged "that a nurse determined that [the inmate] needed an egg-crate mattress," but a physician's assistant "determined that he did not"); *Gelardos*, 2012 WL 2567155, at *3. Following Dr. Laybourn's lead, Warden Wilson denied Oden's administrative remedy requesting that he overturn Dr. Laybourn's decision. Such actions by Warden Wilson do not amount to deliberate indifference because "if a prisoner is under the care of medical experts . . . , a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands." *Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). Accordingly, Claims 3(a) and 3(b) will be DISMISSED WITH PREJUDICE.

### 4. Claims 4 and 8

In Claim 4(a), Oden asserts that Dr. Laybourn acted with deliberate indifference to Oden's eye condition by failing to ensure that Oden promptly received medication when Oden's eye condition flared up in March and April of 2013. In Claim 4(b) and Claim 8, Oden asserts that Dr. Laybourn acted with deliberate indifference by failing to ensure that Oden received appropriate medical care for the tear that developed in his eye in 2013 following the lack of prompt medication. With respect to Claim 4(a), Oden fails to identify any act of deliberate indifference by Dr. Laybourn that occurred within two years of June 6, 2017, that resulted in an injury to Oden's person. *See DePaola*, 884 F.3d at 487 (citation omitted). Accordingly, Claim 4(a) is barred by the relevant statute of limitations and will be DISMISSED WITH PREJUDICE. In Claims 4(b)

and 8, Oden complains that after he failed to receive appropriate medication for his eye in 2013, he developed a tear in his eye for which he did not receive appropriate medical attention. Oden, however, again fails to allege any act of deliberate indifference by Dr. Laybourn that occurred within two years prior to filing the original complaint. Accordingly, Claims 4(b) and 8 will be DISMISSED WITHOUT PREJUDICE.

### 5. Claim 5

In Claim 5, Oden alleges that prior to his incarceration in 2012, the Veteran's Administration had suggested that Oden might benefit from a TBI evaluation.[7] Because of his incarceration, Oden was unable to schedule a TBI evaluation with the Veteran's Administration. Oden contends that Defendants ignored his need for a TBI evaluation and told him to wait until he was released. Finally, in 2017, a new doctor arrived and scheduled Oden for a TBI evaluation. Oden does not allege that following the TBI evaluation, a medical professional followed a course of treatment that ameliorated any medical problem. Where, as here, an Eighth Amendment claim is predicated on a delay in the provision of medical care, the plaintiff must allege facts that suggest "that the delay resulted in substantial harm." *Webb v. Hamidullah*, 281 F. App'x 159, 166–67 & n.13 (4th Cir. 2008) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citation omitted). Oden has failed to allege facts that suggest the delay in scheduling a TBI resulted in substantial harm.[8] Accordingly, Claims 5(a) through 5(d) will be DISMISSED WITHOUT PREJUDICE.

---

[7] Oden's suffered an injury to his head in a motor vehicle accident in January of 2000. (ECF No. 74–1, at 49.) This car accident apparently is the source of Oden's traumatic brain injury.

[8] Additionally, this claim is barred by the two-year statute of limitations.

### 6. Claim 6

In Claim 6, Oden contends that Dr. Laybourn acted with deliberate indifference to a staph infection that Oden contracted in July of 2014. Oden fails to allege any act of deliberate indifference occurring after July of 2014. Accordingly, Claim 6 is barred by the relevant statute of limitations and will be DISMISSED WITH PREJUDICE.

### 7. Claim 7

In Claim 7, Oden contends that Dr. Laybourn acted with deliberate indifference by failing to transfer Oden to a BOP facility "that could accommodate all [Oden's] medical needs." (Second Am. Compl. ¶ 139.) Oden contends that Dr. Laybourn denied his request for a transfer in 2012 and Oden was not moved to an appropriate medical facility until April of 2017. First, Oden fails to identify any act of deliberate indifference by Dr. Laybourn occurring within two years of the date that he filed the action. Accordingly, Claim 7 is barred by the relevant statute of limitations. Additionally, Oden fails to allege facts that reflect the delay in transferring him resulted in substantial harm. *Webb*, 281 F. App'x at 166–67 & n.13 (quoting *Sealock*, 218 F.3d at 1210. Finally, Oden fails to allege sufficient facts to indicate that Dr. Laybourn acted with deliberate indifference by failing to promptly order Oden's transfer to different BOP facility. Accordingly, Claim 7 will be DISMISSED WITH PREJUDICE.

### 8. Claim 9

Lastly, in Claim 9, Oden complains that Dr. Laybourn and Warden Wilson approved Oden's transfer to another prison even though Oden had appointments scheduled with various specialists, including the surgeon who had recently performed rotator cuff surgery on Oden and an orthopedic specialist. Oden fails to allege sufficient facts to indicate that such a transfer posed a substantial risk of serious harm to Oden's person, much less that Dr. Laybourn or Warden Wilson

acted with deliberate indifference to that risk. Oden fails to allege why his new prison would not be able to reschedule any necessary appointments with specialists. *See, e.g.*, *Hernandez v. Keane*, 341 F.3d 137, 147 (2d Cir. 2003) ("The failure to place a hold on plaintiff, thereby keeping him at [a prison] while surgery was being contemplated, is likewise insufficient to establish deliberate indifference."). Accordingly, Claim 9 will be DISMISSED WITHOUT PREJUDICE.

## IV. CONCLUSION

Oden's Motion to Amend (ECF No. 67) will be GRANTED. The Second Amended Complaint (ECF No. 74) will be FILED and will SUPPLANT the prior complaints. Oden's Motion to Stop His Transfer (ECF No. 73) will be DENIED. The Motion to Dismiss (ECF No. 61) will be GRANTED. Oden's FTCA claims will be DISMISSED WITH PREJUDICE. Claims 1(a) through (1)(d), 2(a) and 2(b), 3(c), 3(d), 4(b), 5(a) through 5(d), 8, and 9 will be DISMISSED WITHOUT PREJUDICE. Claims 3(a), 3(b), 4(a), 6, and 7 will be DISMISSED WITH PREJUDICE. The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

Date: 27 Nov 2019
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge

22